IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GRADY A. LEE, SR., )
)
    Plaintiff, )
)
v. ) CIVIL ACTION NO. 2:14-CV-1180-WKW
) [WO]
KIM THOMAS – )
PRISON COMMISSIONER, *et al.*, )
)
    Defendants. )

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

### I. INTRODUCTION

Plaintiff, Grady Lee, Sr. ["Lee"], filed this 42 U.S.C. § 1983 action while he was incarcerated at the Ventress Correctional Facility.[1] Lee's suit concerns the alleged opening of three pieces of legal mail outside of his presence at Ventress on July 18 & 22, 2014, and December 4, 2014. Named as defendants are former Commissioner Kim Thomas, Warden Christopher Gordy, and mail room supervisor Elizabeth Howard. Lee requests declaratory and injunctive relief, damages, costs, and trial by jury.[2] Docs. 5, 6.

Defendants filed an answer, special report, and supporting evidentiary materials addressing Lee's claims for relief. Docs. 13, 14. Upon receipt of Defendants' special report, the court issued an order directing Lee to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Lee that "the court may at any time thereafter and without notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for

---

[1] During the pendency of this action Lee was released from custody.
[2] This action is proceeding on Lee's amended complaint and his amendment thereto. Docs. 5, 6.

summary judgment." Doc. 16 at 2. Lee responded to Defendants' report, *see* Doc. 19, but his response does not demonstrate there is any genuine issue of material fact. The court will treat Defendants' report as a motion for summary judgment, and it concludes that this motion is due to be resolved in favor of Defendants.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Lee to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond

the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Lee's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

### III. THE COMPLAINT

Lee alleges that on July 18 & 22, 2014, and December 4, 2014, his legal mail was opened by mailroom staff without his being present. On July 23, 2014, Lee sent an inmate request slip to Defendant Gordy complaining about this issue. Defendant Gordy informed Lee that his mail had accidentally been cut open. The mail about which Lee complains originated from this court regarding a lawsuit Lee filed against medical staff at Ventress. Attached to Lee's complaint are two exhibits—Exhibits B and C. The exhibits are copies of envelopes postmarked July 18, 2014, and December 4, 2014, which show this court's return address and the written notation "open in error." Doc. 5 at 3–5, Doc. 5-1, Doc. 5-2.

## IV. DISCUSSION

### A. Absolute Immunity

To the extent Lee sues Defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing and under the facts of this case, Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B. Declaratory and Injunctive Relief

Lee's request for declaratory and injunctive relief against Defendants is due to be dismissed as moot. Lee is no longer incarcerated. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal

4

conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that Lee is no longer incarcerated, his request for equitable relief is moot.

**C. First Amendment**

Lee alleges a violation of his First Amendment right to free speech regarding the opening of three pieces of mail from this court outside of his presence on July 18 and 22, 2014, and December 4, 2014. In support of his claim, Lee submits copies of two envelopes sent by the Clerk of Court of this court—one postmarked July 18, 2014, and one postmarked December 4, 2014—which both contain the handwritten notation "open in error." Lee claims that the opening of his legal mail outside of his presence may have: (1) hurt a pending lawsuit he filed in this court against medical staff at Ventress; (2) resulted in falsification of the enclosed documents; or (3) prompted medical staff at Ventress to retaliate against him "in a way that would cause [his] death." Doc. 5, Doc. 5-1, Doc. 5-2.

Defendants' evidence reflects that incoming inmate mail at Ventress is sorted into regular mail and "legal mail." Pursuant to Administrative Regulation 448, legal mail is defined as "[l]etters to and from attorneys, courts, judges, clerks, and other officials of the courts and government agencies." Regulation 448 directs that incoming legal mail be opened in the presence of the inmate, and that a log be maintained which contains the date the mail is inspected for contraband, lists the legal mail received including the sender's name, and reflects that the mail has been signed for by the inmate. Doc. 14-4 at 2.

Defendants explain that once in July 2014, and once in December 2014, mail addressed to Lee became stuck to other mail during the sorting process which resulted in that mail's being

5

opened by a machine. Defendant Howard, an administrative support assistant at Ventress, states that she received a request slip from Lee regarding the opening of his legal mail. She explains:

> [she] answered Inmate Lee that his legal mail was accidentally open[ed] but never taken out of the envelope. It was taped back and opened in error was written on the outside of the envelope.
>
> During the process of sorting mail, letters will stick together and that is how inmate Lee's legal mail was opened by accident. It was stuck with another envelope and accidentally ran through the machine that opens the envelopes. Once we come to the envelope and realize it is from the court it is taped and placed with the legal mail. This did happen on two occasions, July 22, 2014 and December 4, 2014.
>
> On December 16, 2014, when I received a request slip from Warden Gordy about Inmate Lee's complaint of his legal mail being opened, I told Warden Gordy the same thing that it was accidentally opened. I answered the request slip that Inmate Lee wrote Warden Gordy the same way, that his mail was accidentally opened and that I had told him this before. We do not open mail manually; it is opened electronically by a machine.
>
> Inmate Lee received more than three (3) pieces of legal mail during this time. He gives the impression that we open or pick out his legal mail. In July, 2014 he received five (5) pieces and in December of 2014, he received seven (7) pieces. …
>
> Inmate Grady Lee alleges that his legal mail that he received on July 18, 2014 was one of the legal mails that were opened. Inmate Grady Lee did not have any legal mail on this date.

Doc. 14-3 at 1–2; *see also* Doc. 14-2 at 1-14.

In response to Lee's request slip regarding the opening of his legal mail, Defendant Gordy testifies that in December of 2014 he contacted Defendant Howard about the situation.[3] Defendant Howard informed him that Lee's mail was accidentally opened on July 22, 2014, and again on December 4, 2014, because his mail was stuck to the back of another piece of regular mail which

---

[3] Defendant Gordy states that he would not have responded to an inmate request from Lee dated July 22, 2014, because he was on leave from July 21, 2014, to July 28, 2014. Doc. 14-5.

is run through a letter opening machine. Defendant Gordy maintains that the problem was corrected after he became aware of it. Doc. 14-5.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (quotation marks omitted). "Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis v. Goord*, 320 F.3d 346, 351(2d Cir. 2003). Isolated incidents of mail interference, however, are generally insufficient to establish a constitutional violation. *Id.* (holding that the allegation of two incidents of mail interference did not warrant relief where plaintiff failed to allege invidious intent or actual harm); *see also Florence v. Booker*, 23 Fed. App'x. 970, 972 (10th Cir. 2001) ("single incident in which prison officials allegedly improperly opened legal mail" did not justify relief where plaintiff failed to "show either an improper motivation by defendants or denial of access to the courts"). Rather, the inmate must show that a prison official "regularly and unjustifiably interfered" with the inmate's mail. *Davis,* 320 F.3d at 351 (citations omitted).

Here, the opening of legal mail about which Lee complains,[4] at best, represents isolated incidents insufficient to establish a constitutional violation. *Davis*, 320 F.3d at 351; *Gardner v.*

---

[4]In *Taylor v. Sterrett*, 532 F.2d 462, 475 (5th Cir. 1976) (footnote omitted) the court determined that a prisoner's right of access required "that incoming prisoner mail from courts, attorneys, prosecuting attorneys, and probation or parole officers be opened only in the presence of the inmate." In *Al-Amin*, 511 F.3d 1334, the Eleventh Circuit acknowledged that *Taylor* addressed other types of mail but limited its decision to the precise facts before it regarding prisoners' constitutionally protected right to have their properly marked attorney mail opened in their presence. *Cf. Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996) (indicating that because an inmate's incoming court mail is largely a matter of public record, it should not be deemed legal mail); *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987) (same); *McCain v. Reno*, 98 F.Supp.2d 5, 7–8 (D. D.C. 2000) (the Constitution does not require same treatment for court mail as for attorney mail).

*Howard*, 109 F.3d 427, 430–31 (8th Cir. 1997) (isolated, inadvertent instances of legal mail being opened outside of an inmate's presence are not actionable). Lee has not alleged that his mail was "regularly and unjustifiably" interfered with by Defendants or that their actions resulted from an improper motivation. *See Davis*, 320 F.3d at 351; *Al-Amin,* 511 F.3d at 1334. Defendants acknowledge Lee's assertions regarding the opening of his legal mail but maintain that the two pieces of legal mail opened outside his presence were opened accidentally because they were stuck to other pieces of regular mail that were run through an automatic mail opening machine. It is undisputed that, upon realizing the envelopes containing Lee's mail from this court had been opened during that process, prison staff taped the envelopes, noted the error on the envelope, and placed the letters with the other legal mail. Additionally, Defendants' unrefuted evidence reflects that during the time period in question Lee received several other items of legal mail from the courts of this state, a legal agency, and attorneys. Doc. 14-2. Although Lee may have been unhappy about two pieces of legal mail that were opened outside of his presence, his allegation that Defendants' actions amounted to an unconstitutional interference with his incoming legal mail are unsubstantiated. *Rollins v. TechSouth, Inc*., 833 F.2d 1525, 1529 (11th Cir. 1987) (holding that "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment."). Accordingly, Defendants' dispositive motion is due to be granted on Lee's First Amendment claim. *See Anderson*, 477 U.S. at 252.

**D. Access to Courts**

To the extent that Lee alleges a denial of access to the courts, his claim fails because he has not alleged any injury or prejudice, which is required to prevail on such a claim. *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998). The record is devoid of any evidence showing that Lee lost a specific claim in a legal proceeding as a result of Defendants' alleged interference.

Courts have regularly held that interference with an inmate's legal mail implicates an inmate's right of access to courts and free speech as guaranteed by the First and Fourteenth Amendments of the United States Constitution. *Procunier v. Martinez*, 416 U.S. 396, 412–413 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989). Regarding an inmate's right of access to the courts, prisoners are entitled to "a reasonably adequate opportunity" to present claims of constitutional violations to the courts. *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court expounded on the decision in *Bounds* and required that an inmate demonstrate the existence of an "actual injury" affecting his effort to pursue a non-frivolous legal claim to demonstrate a denial of access to the courts. Moreover, *Lewis* emphasized that a *Bounds* violation is related to an inmate's lack of capability to present claims. "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When an inmate ... shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because the capability of filing suit has not been provided, he demonstrates" the requisite injury. *Lewis*, 518 U.S. at 356.

Lee alleges that one of the items of legal mail opened outside his presence was sent from this court regarding a lawsuit he filed against medical staff at the Ventress Correctional Facility. Lee does not identify the contents of the document in question, but he claims that the document could have been falsified, thereby hindering any appeal if an appeal were necessary. He also maintains that it contained information which would cause medical staff to retaliate against him. Doc. 5.

The court takes judicial notice of its own records, which reflect that Lee filed a §1983 action on February 20, 2014 against the prison health care provider in which he challenged the constitutionality of medical treatment he received for various chronic conditions during a prior term of incarceration at Ventress.[5] *See Lee v. Correctional Medical Services,* Civil Action No. 2:14-CV-105-WHA (M.D. Ala. 2016). Lee presents nothing to demonstrate that the disposition of that civil action was affected by any conduct of Defendants or by his inability to access the courts such that he experienced adverse consequences or an actual injury from the alleged deprivation as contemplated by *Lewis*. *Lewis*, 518 U.S. at 349.

> Inmates are not, however, guaranteed "the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims," but are only assured "[t]he tools ... need[ed] in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis v. Casey*, 518 U.S. 343, 354–55, 116 S.Ct. 2174, 2181–82, 135 L.Ed.2d 606 (1996); *see also Wilson*, 163 F.3d at 1290. "The limited types of legal claims protected by the access-to-courts right [are] nonfrivolous appeals from a conviction, habeas petitions, or civil rights suits." *Al–Amin v. Smith*, 511 F.3d 1317, 1332 (11th Cir.), *cert. denied* 555 U.S. 820, 129 S.Ct. 104, 172 L.Ed.2d 33 (2008).
>
> A constitutional prerequisite to a claim of denial of access to the courts is that the complainant must have suffered an "actual injury." *Al–Amin*, 511 F.3d at 1332. In order to show actual injury, a plaintiff must show "deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." *Id*. (internal quotes and citations omitted).

---

[5]This court may take judicial notice of its own records and the records of other federal courts. *Nguyen v. United States*, 556 F.3d 1244, 1259 n.7 (11th Cir. 2009); *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987); *United States v. Glover*, 179 F.3d 1300, 1302 n.5 (11th Cir. 1999)

*Hall v. Sec'y for the Dep't of Corrections*, 304 Fed. App'x. 848, 849–50 (11th Cir. 2008) (unpublished) (alterations in original). *See also Al–Amin*, 511 F.3d at 1333 (conclusory allegations of harm insufficient to establish actual injury).

Here, Lee fails to come forward with any evidence that the actions of Defendants deprived him of the ability to pursue his claims in this federal civil action or in any way hindered his efforts to pursue his claims before this court or any other court. He presents no admissible evidence that the actions about which he complains improperly impeded his efforts to pursue a non-frivolous legal claim. He merely contends that he has suffered emotional trauma. Lee, therefore, has failed to establish the required injury, and Defendants are entitled to summary judgment on his access to courts claim. *Lewis*, 518 U.S. at 356.

**E. Respondeat Superior**

Lee seeks to hold Commissioner Thomas and Warden Gordy liable for the actions about which he complains based on their supervisory positions. Doc. 19. Supervisory personnel cannot be liable under § 1983 for a constitutional violation by their subordinates via a theory of *respondeat superior* or on the basis of vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (doctrine of *respondeat superior* is inapplicable to § 1983 actions); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of *respondeat superior* or vicarious liability); *see also Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that a supervisory official is liable only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation."); *Kilgo v. Ricks*, 983 F.2d 189, 194 (11th Cir. 1993) (holding the prison commissioner's dismissal was proper because no personal involvement or policy by the

department was alleged). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, liability for actions of correctional officials at Ventress could attach to Thomas or Gordy only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Neither Thomas nor Gordy personally participated in or had any direct involvement with the claims made the basis of the complaint. Thus, they can be held liable for actions of correctional officials at Ventress only if their actions bear a causal relationship to the purported violations of Lee's constitutional rights. To establish the requisite causal connection and avoid entry of summary judgment in favor of Thomas and Gordy, Lee must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[ ] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so ..." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Thomas and Gordy] directed the [facility's staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Lee has not met this burden.

The record before the court contains no evidence to support an inference that Thomas or Gordy directed correctional officials to act unlawfully or knew that they would act unlawfully and failed to stop such action. In addition, Lee presents no evidence of obvious, flagrant or rampant abuse of a continuing duration in the face of which Thomas and Gordy failed to take corrective action. Finally, it is clear that the challenged actions did not occur pursuant to a policy enacted by

Thomas or Gordy. Thus, the required causal connection does not exist between the actions of correctional officials at Ventress and Defendants Thomas and Gordy, and liability under the custom or policy standard is not warranted. Based on the foregoing, summary judgment is due to be granted in favor of Defendants Thomas and Gordy on Lee's *respondeat superior* claim.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (Doc. 14) be GRANTED.

2. Judgment be GRANTED in favor of Defendants.

3. This case be DISMISSED with prejudice.

4. The costs of this proceeding be taxed against Plaintiff.

It is further

ORDERED that **on or before November 14, 2017**, the parties may file an objection to the Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of a party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11th Cir. R. 3-1; *Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, on this the 31st day of October, 2017.

                                        /s/ Susan Russ Walker
                                        Susan Russ Walker
                                        United States Magistrate Judge